ROBERT S. BREWER, JR.
United States Attorney
ALEXANDRA F. FOSTER
Assistant U.S. Attorney
Washington, D.C. Bar No. 470096
880 Front Street, Room 6293
San Diego, CA 92101
Telephone: (619) 546-6735
Alexandra.Foster@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 20-MJ-1029-AHG |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER DETENTION** |
| v. | |
| KIRILL VICTOROVICH FIRSOV, | |
| Defendant. | |

The United States of America, by and through its counsel, Robert S. Brewer, Jr., United States Attorney for the Southern District of California, and Alexandra F. Foster, Assistant United States Attorney, hereby files its response in opposition to Defendant's Motion to Reconsider Bond.

## INTRODUCTION

DEER.IO was a Russian-based platform that allowed criminals to purchase access to cyber storefronts and sell their products or services through the DEER.IO platform. DEER.IO storefronts offered for sale a variety of hacked and/or compromised U.S. and international financial and corporate data, Personally Identifiable Information (PII), and compromised user accounts from many U.S. companies. Individuals could also buy computer files, financial information, PII, and username and passwords gleaned from malware-infected computers located both in the U.S. and abroad. In reviewing approximately 250 of the DEER.IO storefronts, the FBI found no legitimate business advertising its services and/or products through a DEER.IO storefront. DEER.IO started

operations as of at least October, 2013, and claimed to have over 24,000 active shops with sales exceeding $17 million by March 2020.[1]

The FBI identified Kirill Victorovich Firsov as the DEER.IO administrator, and arrested him on a Complaint at John F. Kennedy Airport in New York on Saturday, March 7, 2020. Post-*Miranda*, Firsov admitted to being the administrator of DEER.IO, but denied knowledge of the criminal activity on the platform.

Firsov appeared in Court in the Eastern District of New York (EDNY) on Monday, March 9, 2020. After hearing argument from both sides, and weighing the § 3142(g) factors, U.S. Magistrate Judge Peggy Kuo ordered Firsov detained, finding that no condition or combination of conditions would reasonably assure Firsov's appearance in Court.[2] This finding underlies the Commitment Order, wherein the Marshals are ordered to "take custody of the above-named defendant and transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above …." *See* Exh. 1.

San Diego FBI agents took custody of Firsov on Wednesday, March 11, 2020, pursuant to a second Court ordered, which allowed the Marshals to release custody of the Defendant to the FBI. *See* Exh. 2 (Government Motion and Draft Order, wherein the Government states that the Court ordered the Defendant "removed to the Southern District of California in the custody of the United States Marshal Service.") Pursuant to the order, the FBI took custody of Firsov and flew him back to San Diego, and checked him into MCC-San Diego that same day.

On April 24, 2020, Defendant filed a motion for reconsideration and requested that he be released. No specific bond or security were requested. The parties met and conferred telephonically on Tuesday, April 21, 2020, but were unable to reach agreement.

---

[1] The FBI sought and received an order to seize the domain on Friday, March 20, 2020, and has since shuttered the DEER.IO platform.

[2] This AUSA communicated with the AUSA who handled the detention hearing before Magistrate Judge Kuo and the San Diego FBI agents in attendance at the hearing. According to the EDNY AUSA and the agents, the Court held a detention hearing on March 9, 2020. The AUSA sought Defendant's detention as a flight risk. The EDNY Federal Defender argued that Defendant was in the United States on vacation, had no criminal history, and had the financial means to change his arrangements to fly to San Diego, instead of his original vacation destination of New Orleans. Judge Kuo determined that Defendant was a flight risk and had him committed to the custody of the Marshals. Nothing stops the Defendant from filing a motion to reconsider, however, so this AUSA is considering this motion as one asking this Court to reconsider detention.

# ARGUMENT

## A.   The § 3142(g) Factors Continue to Support Detention

This Court should not reconsider EDNY's order of detention. Title 18, United States Code, Section 3142(g) sets forth the factors courts shall consider when determining whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." These factors include, among others, (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, (3) the "history and characteristics" of the defendant, and (4) "the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g). None of those factors have changed in the weeks since the EDNY Court first ordered Defendant detained.

Nevertheless, Defendant urges this Court to reconsider the detention order primarily based on the increased risks of COVID-19 infection in the facility where he is being housed. The United States is cognizant of these risks and, in appropriate cases, has joined in requests to reduce bond or reconsider detention. But "as concerning as the COVID-19 pandemic is," whether release or detention is appropriate must still rest on "an individualized assessment of the factors identified by the Bail Reform Act, 18 U.S.C. § 3142(g)." *United States v. Martin*, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020). Here, the § 3142(g) factors simply do not support setting bond as Defendant proposes.

### 1.   *The Nature and Circumstances of the Offense Have Not Changed*

Defendant is currently charged with Title 18, U.S.C., Secs. 2, 1029(a)(6)(A) and 1029(c)(1)(a)(i) (Aid and Abet Unauthorized Solicitation of Access Devices) and Title 18, United States Code, Sections 2, 1028(a)(8) and 1028(b) (1)(A)(i) (Aid and Abet Trafficking in False Authentication Features).

### 2.   *The Weight of the Evidence Remains Substantial*

The Complaint sets out the facts in greater detail but, in brief, Firsov admits to being the administrator of a platform, which trafficked solely in millions of dollars-worth of stolen PII and offers of services for cyber criminal activity.

### 3. *Defendant's History and Characteristics Have Not Changed*

Firsov remains a Russian citizen with absolutely no ties to the United States, no basis to reside in the United States --as his travel visa was rescinded at the time of his arrest-- and no reason to remain in the United States to face criminal charges with significant period of custody periods. *See generally* USSG 2B1.1(b)(1)(K)(+20 for a $17 million loss amount). Firsov notes that his Russian passport is no longer in his possession, but nothing would stop him from taking a 13-mile trip south to Tijuana and seeking a new Russian passport once across the U.S.-Mexico border.

## B. COVID-19 Does Not Alter the Statutory Analysis

Nothing about the COVID-19 pandemic materially changes Defendant's significant incentives to flee. 18 U.S.C. § 3142(e). Indeed, his belief that incarceration increases his chances of infection—a belief evidenced by his bail motion—suggests that his incentives to avoid punishment have increased. Moreover, during a time when community and law-enforcement resources are devoted to fighting COVID-19, it may be easier for a motivated defendant to abscond. See *United States v. Barai*, No. 2:16-cr-00217-MCE, 2020 WL 1812161, at *2 (E.D. Cal. Apr. 9, 2020) (finding defendant to be "even more of a flight risk," because of the COVID-19 outbreak, given the increased burdens on law enforcement officers that "could very likely make it easier for Defendant to escape, to cross a border, or to go into hiding").

Firsov alleges that a bout of bronchial asthma ten years ago puts him at greater risk of COVID19 and justifies release from MCC. According to Dr. Anna Primerova, Firsov was prescribed Prednizoloni in March 2010 "with a gradual dose reduction to the minimum maintenance dose." The FBI found no medication in Firsov's luggage when he arrived for a month-long vacation in the United States, no inhaler, no Prednizoloni, nothing. Further, when Agents asked Firsov if he was on any medication or suffered from any medical issues before flying him across the United States, he answered that he took no medication and had no medical issues. In fact, when asked about his fear of COVID19, he told the agent that he had no concerns, as he was young and healthy. Finally, the agents were present when Firsov

4

checked into the New York jail. Before admission, he was asked detailed questions about his health, drug use and mental health. *See* Exh. 3. He responded that he had no health issues and took no drugs or medication. *Id*. Although Firsov may have been hospitalized 10 years ago for bronchial asthma, it appears that it no longer affected him by the time he was catching a plane to the United States on March 7, 2020.

The Bureau of Prisons has taken aggressive steps to manage the risk of COVID-19 transmission. *See United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (denying motion for release based in part on the fact that "the Bureau of Prisons is taking system-wide precautions to mitigate the possibility of infection within its facilities"); *United States v. Blegen*, 2020 WL 1619282, at *5 (D. Minn. Apr. 2, 2020) (same). The United States recognizes that even with the efforts of BOP and other facilities, there is still a risk of COVID-19 transmission in custodial settings, and that risk will likely increase as the outbreak spreads. Nevertheless, this generalized risk cannot be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether a particular defendant is properly subject to pretrial detention. Here, even with the risk of COVID-19, the § 3142(g) factors continue to support the detention.

## III.
## CONCLUSION

The United States respectfully requests that Defendant's Motion to Detention be denied.

DATED: April 27, 2020            Respectfully submitted,

ROBERT S. BREWER, JR.
United States Attorney

ALEXANDRA F. FOSTER
Assistant U.S. Attorney